Arguments not to exceed 15 minutes per side. Mr. Morgan Roth for the appellate. It's number 142515 Arthur S. Lieberman v. American Osteopathic Association and others. Arguments not to exceed 15 minutes per side. Mr. Morgan Roth for the appellate. Thank you. Thank you. Good morning, your honors. Mayor Morgan Roth appearing for the appellate. I'd like to reserve three minutes for rebuttal, if I may. You may. This is a case, your honors, which I'm sure you've read the briefs, and has to do with the non-certification of Dr. Lieberman. Dr. Lieberman was an osteopathic doctor and had passed the exam to become a member of the association in 2002, when he had 36 years of practice at that time. He found out, although he thought he was certified and grandfathered in, in 2010 that he had to take the exam again. It surprised him because he understood there was grandfathering, and they told him that grandfather was only for doctors who passed the exam in 1997, even if they only had one day of practice. When you say he was surprised, was there some document in 2002 that said you would never need to take the exam again?  As far as I understood, the rules was you needed to take the exam every eight years or so, and that's why it came up again in 2010. Is that right? Yes, your honor, except that he was surprised because he heard there was a grandfathering in, and he understood that to be by length of practice and by patient seen, as the Watson case denotes. In any event, the fact of the matter is, I'm sure the court is aware, we're all aware, there are many private clubs that you're members of. I'm a member of the American Bar Association, the Federal Bar Association, the New York Bar Association, one after the other, and private clubs, country clubs, and whatever. None require you to be tested. None of the bar associations require you to be tested. Here, this particular osteopathic group, these two organizations affiliated, really have a monopoly and really require a doctor to be certified by taking a test. Do you contest or contend that the organization should not have to set its rules or qualifying rules that govern certification and additional requirements to attain that certification? To a degree, yes, your honor. What I'm saying is that if somebody wants to join a professional organization, they should be licensed and allowed to practice, not take a test in areas that they never were educated in or test in areas they haven't practiced, both law or medicine. But he did pass it in 22002, right? It was the same kind of test. Yes, and he failed it by three points. No, in 10. No, that's what I was going to say, your honor. I thought he passed it in 10. That's what I was going to say, no. Exactly what I was going to say. I agreed with you. He passed it in 2002, but failed it in 2010. And there's a reason for that. In 2010, he was now more eight years away from certain parts of his practice. He no longer did hospital. To be frank, he was also older, and the notion, as a matter of policy, we'll get the law in a minute, but as a matter of policy, just like some states, you have to take your driver's test again when you get to be 75 or 80. I don't know. Do you contend that it's some type of unconstitutional to require recertification generally? Your honor, no, I do not. However, the recertification should be on the basis that you're still licensed to practice, not in giving you a test in areas that you don't practice in and haven't practiced in in years, also giving it a computerized test. Do you have any case, I mean, we're talking about a couple of different things. You're kind of arguing that this particular kind of test is unfair. There was a case, the dean of Stanford Law School failed the California bar, even though she's one of the most prominent Supreme Court advocates, probably because she didn't know California trusts in the state law. But is there any law that lets us look at the nature and quality of professional certification as opposed to more of a due process avenue? First of all, as far as the dean not passing, that's state licensing. Once she passes it and gets her license, she should be able to belong to any professional organization. That's first of all. Second of all, the cases that we cited in our brief stood for the proposition that if you're monopolistic, the association, and if you know that you're going to be causing somebody harm, that's willful and wanton, then their process is unconstitutional or willful and wanton because they are causing damage to be done that they know will be done by their conduct. Why did they have to circulate throughout the internet that this member didn't pass? I mean, I belong to a lot of clubs. They don't even tell anybody on the outside who their members are, but they got to circulate it. Why? Because the insurance companies then get it, and then what happens is they stop covering the patients. Insurance companies love it, but so does the association because it gives them extreme power. Why would you think that in 1997 they certify somebody that's got one day experience because they wanted to get a broad membership? So then they said, you don't ever have to take the test again. Come and become a member. The fact of the matter is that the conduct is not just monopolistic, but knows there's going to be danger and damage. How about the damage to the patients? There are patients this doctor has seen for decades and families. They have his confidence. He has their confidence. They rely upon him, and all of a sudden they can't use him because of the fact they're not covered by insurance. The fact of the matter is it just doesn't affect him. If you read the newspapers and the circulars are out by doctors and the groups, every week you see articles where they're screaming about it because it's unfair. I would hate to take an exam where I was examined on patent law because I haven't practiced patent law, and you don't get the depth in it by just walking in and taking the exam. But they do it to have control, and that's what the cases say. The cases say if it's an economic necessity, and the lower court found an economic necessity here, and there's a monopoly, then you have a right. And all we're asking for is a right to go to trial and have the fact issue decided by a jury, which the cases say when it comes to Wolfo and Watten. What would the fact issue for trial be or the major fact issue? It would be Wolfo and Watten and the misconduct of the defendant. By misconduct, you mean would you try whether the test is fair, or would you try whether the test is useful? That's part of it, yes. Arbitrary and capricious, and Wolfo and Watten would be the issues in that respect. And one would be on Wolfo and Watten, it's when you know you're going to cause damage and you still continue your behavior, whether it's negligent or willful. So just to help me, what is the interrogatory that you would send to the jury about this case? What's the question that you would have them answer? I'd have them answer whether their certification process was willful and wanton, and whether or not it was unreasonable, and that's part of arbitrary and capricious, it's on the basis of non-fairness, whether it's fair, and then ask whether this is fair, this is fair, this is fair. In other words, he'd be tested for areas that he doesn't practice in, that he'd be tested on computerized when he doesn't have computer knowledge. By the way, in 2002 it wasn't computerized, like it became in 2010. And how somebody that misses by three points one section that he doesn't even practice in should be non-certified. Is that obstetrics you're talking about, or the computer part of it? I'm sorry? Are you talking about obstetrics there, or the computer part? You said he missed one part by three points. No, the three points that he missed was one part of the exam. Yeah, what part was it? That's the question. There was two sections. Obstetrics was it? Yes. I thought it was called cognitive something. Cognitive, yes. Cognitive, cognitive. I thought he still practiced obstetrics. He doesn't do any hospital at all. He doesn't deliver babies anymore. Anymore. No, he hasn't for years. He hasn't done it in years. He used to do it in the hospital, but he hasn't been in hospital for years as far as practice. He strictly office practice with his patients, that's it. And that's what he does. And what they want him to do is pass tests regarding areas he does not practice. What area did he fail by three points? That's my question. If you don't know, you don't know. I thought it was called the cognitive portion of the examination. That's from the red brief, I'm not sure. Yes, that's it. They cite the complaint, paragraph 21-22, the first amended complaint. But that's even if you shouldn't have to take a test. You shouldn't have to take a test. You're licensed by the state. You're invading the state's right. Now that's wonderful if you want to make them take a test, but you don't publicize it on the internet and you don't continue doing that when you know that insurance will not be covered by the patients. But it gives them more power. So he is licensed by the state and continues to be. Yes, Your Honor. Okay, so you have private companies who, the insurance companies for their economic reasons, only want to pay for people who are members of this association, right? That's correct, Your Honor. And then the association has certain standards for membership. And the association publicizes it to everybody, including the insurance companies, so that it will continue having that kind of damage. So that part, is that your tortious interference part? It's tortious interference, but it's also willful and wanton. Once you know that you're causing damage, then under willful and wanton, whether it's reckless, negligent, your conduct then becomes willful and wanton. And so that conduct here would be establishing the test at all. That is, you're not saying that they graded it improperly or that the machine didn't work right. I'm saying three things. First of all, establishing the test at all. Second of all, in the way they had the test performed, whether in areas that are not practiced by the physician. And then finally, that the grandfather physician was only for their benefit to do it one year for somebody practicing one day, when in fairness, grandfather is supposed to be under the Watson case, under the years of practice and the patient's number you've seen. Okay, counsel, I think your time's expired. Thank you, Your Honor. You have three minutes for reading. I know it has. Thank you. Good morning, and may it please the Court. Trent Collier for the American Osteopathic Association and its Board of Family Physicians. The AOA is a private group that certifies doctors who have met its level of excellence. And one of the ways it determines to whom it should give this certification of excellence is by having them take a test. This test includes a practical portion and a cognitive or objective portion. Dr. Lieberman failed that test. He failed it twice. Dr. Lieberman has come to this Court asking it to compel a private club to certify him as having met a standard of excellence that he has not met. The District Court correctly declined that invitation, and we submit that this Court should do the same. I want to try to parse out sort of two separate issues that came up during the previous argument. One issue is whether or not there's an economic necessity to take and pass this test. That's one issue. If they prove that or if they plead that, then you get to the next step, and the next step is whether anything in the testing process violates due process. The District Court ruled in the AOA's favor based on this second step. It held that there was no basis in the complaint under the Iqbal and Twombly cases. There are no plausible allegations that anything about the testing was arbitrary or unreasonable. And that is probably the clearest basis for this Court to affirm the District Court's judgment. We submit that there was also no pleading of economic necessity, and that's been addressed in our briefs, but I'll focus here on the District Court's holding, which is whether or not there was any plausible allegation of anything arbitrary or unreasonable about this testing. Well, you know, when you talk about the economic harm, counsel says that because the insurance companies will not pay for the patient care, then inferentially these patients are going to go to another doctor where they can get insurance coverage. So wouldn't that constitute economic harm? What the case law requires, though, is more than harm. Under the Illinois case law that governs here, a plaintiff has to prove not just harm, but that it was necessary. And when you look at the cases, they've only found that the plaintiff has only cited one case in which a court has found this, and that's the unpublished case called Busey. And the court found that there was harm there because the doctor was unable to practice at all. That's not the case here. The plaintiff can still practice. He can still see patients. He just may not be covered by some insurers. So your argument is that the standard is economic necessity, meaning you can't have an economic livelihood without it as opposed to your income is reduced? Right. But I take it you're saying that the district court below did not rule on this basis, so we would not have to go into that if we agree with the district court on the basis it did rule on. Right. I think you can assume for purposes of argument here that they've proven or that they've pleaded that. The next question is, have they pleaded any plausible basis for the court to say there's anything arbitrary about this testing? So let me try to delve into their arguments. First, they argue that there should be no testing at all. I think the clear answer to this argument comes from the Miller case that we cited in our brief, Miller v. Department of Professional Regulation, which upholds testing, and it upholds testing even for people that have practiced for 20 years. The plaintiff in that case had practiced 20 years. He still had to pass a test. Now, the plaintiff has said, well, the court shouldn't look at Miller because that was a constitutional due process case. But if testing can survive constitutional due process, it can certainly survive the common law due process test that applies to a private club. In fact, I mean, I really don't think it would make sense, and they never cited any case to say that the due process requirements for a private club are higher or greater than they would be for the government. So that, I think, is the answer to that argument. Next, they argue that the practice of grandfathering itself is wrong, or as they frame it, if they grandfathered doctors who passed the test in 1997, then they should grandfather doctors who passed the test in 2002. What was behind establishing 1997 as the cutoff date for grandfathering? Is that just an arbitrary date? I really can't answer with any certainty. I think grandfathering by nature involves cutting people out who are very close to hitting that threshold. If you grandfather doctors who have practiced for 40 years, you're going to cut out doctors who have practiced for 39 years and are just as qualified as doctors who have practiced for 40 years. But that line has to be drawn somewhere. And in the Watson case, the U.S. Supreme Court held that the practice of grandfathering itself is permissible. The plaintiffs try to get around Watson by saying that there was more in Watson. They say they weren't just grandfathered, but they had to show that they had practiced for a certain length of time. That's not quite right. What the law at issue in Watson was, is the doctors had to have been practicing medicine as of, I think it was, 1898, and they had to prove that they had treated at least 12 patients in the past year. So this was not about showing that they were good doctors or qualified doctors. It was just about showing that they were still practicing as doctors. Was the 1997 grandfather date in effect in 2002? That is, as I understand it, this gentleman has been practicing for 30 or 40 years, so he could have applied to the association well before 1997, and then he would have been grandfathered. But when he decided to sign up in 2002, did he know that he sort of tried to almost make it like a stopple, like you tricked him into thinking he'd be grandfathered? Is there any merit to that or anything in the allegations that would support that? I don't think so. I mean, this comes to the court through a 12B6 motion, so we're basing the argument on what's in the complaint. I don't think there's any allegation that he didn't know he could have taken this test. The fact is he could have taken the test in 1997. But conversely, and conversely, although he says he was shocked to hear that he would have to take it again in 2010, is there any allegation that that wasn't in fact the rule? No. I think he says that he didn't know it was the rule, but I don't think he's claimed that that wasn't actually. Okay, so there's not an estoppel or a sandbagging claim here. Right. I don't believe there is any sort of claim along those lines. The plaintiff this morning talked about his belief that the AOA's actions were willful and wanton. I think Judge Duggan, in his opinion, got this right. He said when you look at the state case law that governs this issue, what they require is a showing of bias, prejudice, or lack of good faith. So it's not just using the term willful and wanton under Iqbal and Twombly and the heightened pleading rules. He has to plead facts showing that there was bias, prejudice, or lack of good faith by the AOA. He has not pleaded those facts. So like they misgraded the exam or they gave him a harder exam than other people? Right, or they knew that he didn't practice in a certain area and they added that just for this year or something like that. He hasn't pleaded anything along those lines. Is there anything either way about how many people who come up for recertification pass? The only thing I can give an answer to that is Judge Duggan, after the dispositive motions were argued, asked us to go back to the AOA and find out whether anyone had ever been certified despite having failed this test. And so we went back and we provided an affidavit from Carol Thoma, who is the president of the Board of Family Physicians, and she said no, this has never happened. So there's no comparator where other people got off easy and he didn't. Right, there's no facts and I don't think that was even pleaded. The last issue I'll address this morning is there was an argument this morning that it was somehow unfair for the AOA to announce on the Web or announce publicly that the plaintiff failed this test. That's the first time that I've heard this issue. It wasn't raised below. And I think the answer to that issue comes from the Austin case, which is an opinion from Judge Posner in which a similar claim was made. And Judge Posner said, well, the function of tort law is not to protect plaintiffs from true statements. The fact is the plaintiff failed the test. And it is unfortunate, but he did fail that test. And therefore, the AOA properly denied his request to be recertified. Unless the panel has more questions, I'll yield my time. Anything else? No, thank you. Thank you. You have three minutes for rebuttal, Mr. Morganroth. By the way, the Austin case that he just mentioned, it was denied there because there was no showing of any economic necessity, not for any other reason. Secondly, the lower court here did find an economic necessity after reading everything. Next of all, I think he misstated the Busse case as well. In that case, he stated that they only found an economic necessity because doctor could not practice at all. That's not accurate. The court said and found that the plaintiff doctor who was an anesthesiologist could not earn a significant income in his field absent the ability to practice at a hospital without board certification. Does the complaint allege that your client no longer earns a, quote, significant income? It did, and we also produced proofs for the court. And the judge found that it was an economic necessity, specifically in this case. That's not even part of the appeal as far as we're concerned because that already was determined by the court to be present. And I checked about the failure. They can seek affirmance on any ground presented in the record. They don't have to cross-appeal. I'm not saying they're right. I'm just saying they can try. I understand that, Your Honor. Mr. DeNovo, I'm just saying that the court did find that there, and I'm not saying that it can't be raised. However, and I checked on the failure of the test, it was the cognitive portion that he failed by a few points, and he did pass the practical performance. And by the way, I also checked. It's been 20 years since he practiced in a hospital and 20 years since he practiced the areas that he failed a few points on. But when they say that they can tell the truth, you can tell the truth and hurt people. That doesn't mean that you can't, shall we say, restrain yourself from harming people. Why does it have to be publicized which members flunk? Why does it have to be conveyed to the insurance companies? I don't belong to any club where the membership itself isn't kept internally and only the members get noticed who the members are. And believe me, I'm in a lot of clubs, but none of them require me to be tested in order to be in those clubs. Once upon a time, it used to be used as an excuse to exclude people, and that's what it is here. It's used for an excuse to be able to have people pay you. This particular organization has become huge and gets tremendous income, and so do the insurance companies by not covering. Thank you very much. Thank you, Counsel. The case will be submitted, and the clerk may adjourn court.